IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALFORD WINSLOW PARKER, | * |
| Plaintiff, | * |
| vs. | * Civil Action No. ADC-17-435 |
| NANCY A. BERRYHILL,<br>Acting Commissioner,<br>Social Security Administration, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On February 15, 2017, Alford Winslow Parker ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny his claim for Supplemental Security Income ("SSI"). *See* ECF No. 1 (the "Complaint"). After consideration of the Complaint, the parties' cross-motions for summary judgment (ECF Nos. 20 and 23), and the response thereto (ECF No. 24), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 20) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 23) is GRANTED, and the decision of the SSA is AFFIRMED.

### PROCEDURAL HISTORY

On June 26, 2012, Plaintiff filed a Title XVI application for SSI, alleging disability beginning on February 1, 2012. His claim was denied initially and upon reconsideration on August 28, 2012 and April 18, 2013, respectively. Subsequently, on May 7, 2013, Plaintiff filed a written request for a hearing and, after three continuances, on August 20, 2015, a video hearing was held before an Administrative Law Judge ("ALJ"). On August 26, 2015, the ALJ rendered a

1

decision finding that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [("the Act")], since June 26, 2012, the date the application was filed." ECF No. 15 at 29. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on December 21, 2016, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481 (2017); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On February 15, 2017, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's denial of Plaintiff's disability application.[1] On August 23, 2017, Plaintiff filed a Motion for Summary Judgment. On December 7, 2017, Defendant filed a Motion for Summary Judgment, to which Plaintiff responded on December 28, 2017. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement and Defendant's Motion for Summary Judgment, including the response thereto.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the

---

[1] On December 29, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the [Act], [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." (citations omitted)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Johnson*, 434 F.3d at 653 (internal citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such a severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement

4

of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's RFC, which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (*e.g.*, allegations of pain) using a two-part test. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c).

The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p, 1996 WL 374186, at *1–9 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *5.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since June 26, 2012, the application date. ECF No. 15 at 16. At step two, the ALJ found that Plaintiff had the severe impairments of obesity, obstructive sleep apnea, history of meniscal tear in the right knee with chronic extensor tendinosis and peritendinitis, tendinitis of the left ankle, and degenerative disc disease of the lumbar spine. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 17. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 416.967(a) except [Plaintiff] can lift and carry ten pounds. In an eight-hour workday, he can stand and/or walk for two hours and for one hour at a time. In an eight-hour workday, [Plaintiff] can sit for six or more hours, but only for one hour at a time. He can never operate foot controls. [Plaintiff] can continually reach in all directions, handle, finger, feel, and push/pull with his bilateral upper extremities. [Plaintiff] can never kneel, crawl, or climb ladders, ropes and scaffolds, but can occasionally climb ramps and stairs, balance, crouch, and stoop/bend. He must avoid all exposure to vibration and hazards such as machinery and heights.

*Id.* at 18. Based on the resulting RFC, the ALJ then determined that Plaintiff was unable to perform any past relevant work. *Id.* at 27. Finally, at step five, the ALJ found that "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 28. Accordingly, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in the [Act], since June 26, 2012, the date the application was filed." *Id.* at 29.

## DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the record as a whole and raises three specific allegations of error on appeal: (1) that the ALJ erred during his step three determination because Plaintiff's lumbar spinal stenosis meets or equals Listing 1.04; (2) that the ALJ failed to obtain an updated medical expert opinion regarding medical equivalency after the submission of significant medical evidence; and (3) that the ALJ improperly evaluated Plaintiff's obesity. Each of Plaintiff's arguments lacks merit and is addressed below.

### A. Substantial Evidence Supports The ALJ's Determination That Plaintiff's Lumbar Spinal Stenosis Does Not Meet Listing 1.04.

Plaintiff first contends that the ALJ failed to properly evaluate his lumbar spinal stenosis under Listing 1.04. ECF No. 20-1 at 14. Specifically, Plaintiff argues that the ALJ should have looked to "the objective imaging reports" when evaluating whether Plaintiff's lumbar spinal stenosis met the requirements of Listing 1.04. *Id.* Defendant argues that Plaintiff's lumbar spinal stenosis does not meet Listing 1.04. ECF No. 23-1 at 5. The Court agrees with Defendant.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Where a claimant can show that her condition "meets or equals the listed impairments," the claimant is entitled to a conclusive presumption that she is disabled within the meaning of the Act. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability"). The burden of proof is on the claimant to show that he meets *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.* On the other hand, "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (internal citations omitted).

Remand is appropriate where the "ALJ's opinion failed to apply the requirements of the listings to the medical record." *Id.* at 292; *see Fox v. Colvin*, 632 F.App'x. 750, 755–56 (4th Cir. 2015) (holding that the ALJ's conclusory and perfunctory analysis, at step three necessitated remand). In evaluating whether an ALJ's listing comparison was proper, however, the Court is not confined to the ALJ's analysis at step three and instead must consider the reasoning provided by the ALJ in the decision in its entirety. *See Schoofield v. Barnhart*, 220 F.Supp.2d 512, 522 (D.Md. 2002) (holding that remand is not warranted "where it is clear from the record which [L]isting . . . w[as] considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the [s]tep [t]hree analysis which allows [the

reviewing c]ourt readily to determine whether there was substantial evidence to support the ALJ's [s]tep [t]hree conclusion").

Particularly relevant to this case is Listing 1.04, which specifically notes "spinal stenosis" and "lumbar spinal stenosis" as impairments covered under the listing. 20 C.F.R. pt. 404, subpt. P, app. 1, 1.04. Listing 1.04 states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.* "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Zebley,* 493 U.S. at 530 (emphasis in original). An impairment that exhibits only some of the criteria, no matter how severe, does not qualify. *Id.* at 529–32.

During his step three analysis, the ALJ explained why Plaintiff failed to meet the requirements of Listing 1.04A:

> [Plaintiff]'s degenerative disc disease does not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root or the spinal cord with additional evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight-leg raising, or spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication.

ECF No. 15 at 18. The ALJ's reasoning outlined the symptoms required by Listing 1.04A and identified the listed symptoms that were not supported by Plaintiff's medical record. The ALJ further cited multiple exhibits in the record to support his findings and explain his reasoning, including support from the record, in his step three and step four discussions. Specifically, the ALJ's step four analysis contained a several mentions of Plaintiff's spinal impairments:

> [Plaintiff presented to the emergency room on October 11, 2012, for complaints of dysuria and hematuria. . . . [A]n incidental finding of mild degenerative disc disease of the lumbar spine was noted (Exhibit 2F, page 6). . . .
>
> . . . .
>
> [Plaintiff] was seen at St. Paul & Biddle Medical Associates on April 30, 2013, for complaints of lower back pain, providers noted that [Plaintiff] had not been seen for these complaints since December 2011. At this time, [Plaintiff] reported that his pain management consultation had been approved. On examination, [Plaintiff]'s flexion was limited. Records indicate that an MRI had revealed spinal stenosis at L4-L5 with a right lateral herniation. Physical therapy was placed on hold and [Plaintiff] was advised to return after the pain management consultation (Exhibit 3F).
>
> . . . .
>
> On December 11, 2013, [Plaintiff] was seen by Dr. Edwin Fulton at Bay Area Orthopedics and Sports Medicine. At this time, [Plaintiff] reported that he had injured his knee on a job in October 2009. He indicated that he had also injured his back moving a

11

couch on the same date. [Plaintiff] reported that he had been treated in the emergency room and released. He complained that he continued to be symptomatic and sought out treatment in October 2010 at St. Paul & Biddle Medical Associates. [Plaintiff] endorsed consistent treatment there, stating that he continued to experience symptoms in his right knee and lower back. On examination, [Plaintiff] walked with an antalgic gait. He complained of a limited range of motion, swelling, limited ambulatory ability, and limited motion. [Plaintiff] did exhibit a decreased range of motion in his lumbar spine with tenderness noted on the right side of L4-S1. Straight leg raise testing was positive on the right. . . . [Plaintiff] was assessed with posttraumatic injuries to the lumbar spine with continuing pain and a radicular right-sided component . . . . Dr. Fulton stated that [Plaintiff] had not reached maximum medical improvement and stated that [Plaintiff] needed pain management for epidural injection and facet blocks. . . .

When seen by Dr. [David] Alexander on February 11, 2014, . . . [Plaintiff] also complained of continued lower back pain. No deficits were noted on examination (Exhibit 16F). . . . At a follow up with Dr. Alexander on May 9, 2014, [Plaintiff] complained of continued lower back and right knee pain. . . . Aside from a limited range of motion in the lumbar spine, no deficits were noted on examination. [Plaintiff] was advised to continue follow up with the orthopedist (Exhibit 16F).

. . . .

[Plaintiff] was seen by Dr. Constantine Misoul on August 11, 2014, for an orthopedic evaluation and impairment rating secondary to work related injuries sustained in October 2009. Since the injury and despite treatment, [Plaintiff] reported that he continued to experience lower back pain with radicular symptoms in both legs. He endorsed pain with standing, sitting, and bending. . . . On examination, [Plaintiff]'s gait was slightly antalgic. Tenderness was noted over the paraspinal and paralumbar musculature. A decreased range of motion was noted and straight leg raise testing was positive. . . . Based on the examination and previous imaging, Dr. Misoul opined that [Plaintiff] had a twenty percent permanent partial impairment rating for his lumbar spine . . . (Exhibit 8F).

. . . .

[When] treated in the emergency room on March 26, 2015, . . . [Plaintiff] also complained of lower back and leg pain. . . . [Plaintiff] did exhibit a painful and reduced range of motion in his back . . . . His gait was slow, but normal. [Plaintiff] was assessed with sinusitis, plantar fasciitis, and chronic back pain (Exhibit 9F).

. . . .

At the request of this Agency, Dr. Sarah White performed a consultative physical examination of [Plaintiff] on June 2, 2015. . . . He stated that treatment, which included physical therapy and medication, provided only temporary relief. . . . No deficits were noted in the neck or upper extremities. [Plaintiff] exhibited pain and a decreased range of motion in his lumbar spine. Tenderness was noted over the paraspinous muscles. . . . [Besides some additional pain in his right knee and left ankle, n]o other physical or neurological deficits were observed. . . . While noting that [Plaintiff]'s gait was abnormal, Dr. Smith stated that [Plaintiff]'s station was normal. She opined that [Plaintiff] could not bear weight normally, but stated that he did not require an assistive device. . . .

. . . .

[Plaintiff] was subsequently seen [by] Christine Brown, PA-C at Davis Spine & Orthopedics on June 3, 2015, for complaints of lower back, right knee, and left ankle pain. He alleged that most movements increased his pain symptoms. On examination, [Plaintiff] did not appear to be in any distress. He walked favoring his right side. Heel-toe gait was within normal limits. [Plaintiff] was limited in his ability to extend and flex his back secondary to pain. He complained of tenderness to palpitation in the lower lumbar paraspinals. Straight leg raise testing was positive on the right. However, no sensory or motor deficits were observed. . . . An X-ray of the lumbar spine showed mild dextroscoliosis and mid degenerative disc height loss, worse at L3-L5. No instability was seen. . . .

An MRI of the lumbar spine of June 13, 2015, revealed a left sided disc protrusion at L2-L3 with twenty-five percent spinal canal stenosis. Osteophyte formation and bulging was seen at L3-L4 with twenty-five percent spinal canal stenosis. A right posterior foraminal L4-L5 osteophyte and disc extrusion complex was seen with fifty percent spinal canal stenosis (Exhibit 17F, pages 11 and 12). . . . [P]hysical therapy was ordered for his back (Exhibit 17F). [Plaintiff] did begin physical therapy at Life Fitness Physical

> Therapy on June 25, 2015. He reported improvement [in] his symptoms after the session. [Plaintiff] reported overall improvement by July 1, 2015. He did complain of some pain when seen on July 8, 201[5] (Exhibit 15F).

*Id.* at 20–25.

Plaintiff insists that the record contained sufficient evidence to support a determination that he met or equaled Listing 1.04. ECF No. 20-1 at 15. Specifically, Plaintiff points to several medical records summarized by the ALJ in his analysis, which support that he experienced a decreased range of motion, tenderness in the lumbar spine, positive leg raise testing, and antalgic gait. *See id.* at 14–15. While this evidence supports several of Listing 1.04's criteria, it does not support *all* of the criteria of the listing. *See Zebley*, 493 U.S. at 530. In particular, the evidence does not support a finding of nerve root compression as required by Listing 1.04A, spinal arachnoiditis as required by Listing 1.04B, or lumbar spinal stenosis resulting in pseudoclaudication as required by Listing 1.04C.[2] Therefore, in light of the evidence in the medical record discussed at step four, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or equal Listing 1.04 and must affirm.

### B. The ALJ Was Not Required To Obtain An Updated Medical Expert Opinion.

Plaintiff next argues that the ALJ erred by failing to obtain an updated medical opinion from a medical expert pursuant to Social Security Ruling ("SSR") 96-6p where Plaintiff submitted additional medical evidence that could modify the state agency medical consultant's finding that his impairment was not equivalent in severity to any impairment in the Listing. ECF

---

[2] Even if Plaintiff's evidence supported a conclusion that Plaintiff met a listing, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, where there may be substantial evidence in the record that would support a finding of disability, in addition to substantial evidence supporting the ALJ's contrary finding, this Court should not disturb the ALJ's conclusion so long as it is one of the conclusions supported by substantial evidence.

14

No. 20-1 at 15. Plaintiff points to updated medical imaging submitted at the hearing and proffers that a medical consultant should have received this new evidence. *Id.* at 16. The Court finds no error.

Here, at the reconsideration level, a state agency medical consultant evaluated Plaintiff and laid out several limitations for Plaintiff in a report dated April 17, 2013.[3] ECF No. 15 at 121–22. While some medical records mentioned above (i.e., reports from Davis Spine & Orthopaedics, including an X-ray, and the June 13, 2015 MRI, ECF No. 15 at 725–759) were not available to the state agency medical consultant because they were produced after she rendered her opinion, the ALJ was not required to request an updated opinion from the medical consultant. SSR 96-6p requires that an ALJ or the Appeals Council obtain an updated medical opinion from a medical expert "[w]hen no additional medical evidence is received, but in the opinion of the [ALJ] or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or [w]hen additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the [s]tate agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *3–4 (July 2, 1996). SSR 96–6p makes clear that the determination is discretionary and within the province of the ALJ. Because the ALJ did not find that the post-reconsideration level medical evidence would change the state agency medical consultant's findings, he was not required to obtain an updated medical opinion. *See, e.g., Landers v. Comm'r, Soc. Sec. Admin.*, SAG-13-1390, 2014 WL 5495202, at *3 (D.Md. Oct. 28, 2014). Moreover, Plaintiff does not

---

[3] Plaintiff was evaluated at the initial level by a different state agency medical consultant on August 28, 2012 who opined that there was insufficient evidence to determine the severity of Plaintiff's medical conditions. ECF No. 15 at 113.

identify or cite specific medical records supporting his claim of medical equivalency nor does he offer any reason why the evidence submitted after the state agency medical consultant's evaluation would change the state agency medical consultant's finding. Thus, the ALJ did not err.

**C. The ALJ Properly Considered Plaintiff's Obesity.**

Plaintiff challenges the ALJ's consideration of his obesity in combination with his other impairments on his ability to work pursuant to SSR 00-3p[4] and requests a remand so that the ALJ can further consider the impact of his obesity during his sequential evaluation. ECF No. 20-1 at 16–17. Defendant contends that the ALJ's decision demonstrates that he considered Plaintiff's obesity in his determination. ECF No. 23-1 at 7. The Court agrees with Defendant.

SSR 02–1p explains the administration's policies for evaluating a claimant's obesity. SSR 02–1p mandates that the ALJ consider both the individual and cumulative effects of obesity at steps two through five of the five-step inquiry. SSR 02-1p, 2002 WL 34686281, at *3–7 (Sept. 12, 2002); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1 (2002) ("[W]hen determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's [RFC], adjudicators must consider any additional and cumulative effects of obesity."). "[An ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record." SSR 02-1p, at *6.

---

[4] SSR 02-1p supersedes SSR 00-3p. Thus, our discussion will focus on SSR 02-1p even though Plaintiff cited to SSR 00-3p in his Motion for Summary Judgment.

Here, the ALJ discussed Plaintiff's obesity during his step 2 analysis:

> In reaching the decision herein, the undersigned specifically considered the guidelines set forth in [SSR] 02-01p, which establishes that obesity must be considered in determining whether a claimant has a medically determinable impairment; whether an impairment is severe; whether an impairment meets or equals a listing; and whether an impairment prevents a claimant from doing past relevant work and other work that exists in significant numbers in the national economy.
>
> Records show that [Plaintiff] is six feet, two inches tall and weighs approximately two hundred seventy-four pounds. Using the National Health Institute Body Mass Index (BMI) calculator, [Plaintiff]'s BMI is 33.9. Under the clinical guidelines specified in [SSR] 02-01p, [Plaintiff]'s obesity is classified at Level I. The undersigned has considered [Plaintiff]'s obesity singly and in combination with other alleged impairments in determining h[is RFC]. [Plaintiff]'s obesity is not solely disabling, nor does it contribute to a finding of disability when assessed with [Plaintiff]'s other medically determinable impairments.

ECF No. 15 at 17. Moreover, without expressly mentioning Plaintiff's obesity, the ALJ's RFC determination included several limitations to account for the functional difficulties that resulted from Plaintiff's obesity. Specifically, the RFC included a limitation that "[i]n an eight-hour workday, [Plaintiff] can stand and/or walk for two hours and for one hour at a time. In an eight-hour workday, [Plaintiff] can sit for six or more hours, but only for one hour at a time." ECF No. 15 at 18. The ALJ also restricted Plaintiff from kneeling, crawling, and climbing ladders, ropes, and scaffolds, but only occasionally limited Plaintiff to climbing, balancing, crouching, stooping, stooping, and bending. *Id.* ("[Plaintiff] can never kneel, crawl, or climb ladders, ropes and scaffolds, but can occasionally climb ramps and stairs, balance, crouch, and stoop/bend."). Both of these RFC limitations closely track the language in SSR 02–1p which lists the work limitations potentially caused by obesity. *See* SSR 02-1p, at *6. Thus, the Court rejects Plaintiff's contention that the ALJ ignored Plaintiff's obesity in his RFC finding. *See Richards*

*v. Astrue*, No. 6:11-cv-00017, 2012 WL 5465499, at *8 (W.D.Va. July 5, 2012) (finding that the ALJ properly considered claimant's obesity in accordance with SSR 02-1p where there was no evidence in the record suggesting claimant's obesity was disabling or that it resulted in functional limitations that would require the ALJ to engage in a more detailed evaluation). To the contrary, the ALJ considered Plaintiff's obesity in accordance with SSR 02-1p when he listed it as a severe impairment at step two and then incorporated obesity-related functional limitations into Plaintiff's RFC between steps three and four. ECF No. 15 at 17–18. Therefore, Plaintiff's allegation of error fails.[5]

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was not disabled within the meaning of the Act since June 26, 2012. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 20) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 23) is GRANTED,

---

[5] Furthermore, even if the ALJ's discussion of Plaintiff's obesity was insufficient, such failure constituted harmless error because there was no medical evidence before the ALJ, and none in the record, stating that claimant's alleged obesity exacerbated his impairments. *See Richards v. Astrue*, No. 6:11-CV-00017, 2012 WL 5465499, at *8 (W.D.Va. July 5, 2012) (finding that the ALJ properly considered the claimant's obesity in accordance with SSR 02-1p where there was no evidence in the record suggesting that claimant's obesity was disabling or that it resulted in functional limitations that would require the ALJ to engage in a more detailed evaluation); *see also Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached." (internal citations and quotation marks omitted)); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases).

and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 18 January 2018

_____
A. David Copperthite
United States Magistrate Judge